**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 2008-48 (WOB)**

**FERLIN DOBSON**                                                        **PLAINTIFF**

**VS.**                                    <u>**OPINION AND ORDER**</u>

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**


    This matter is before the court on the motion for summary
judgment of the plaintiff (Doc. 9) and the cross-motion for
summary judgment of the defendant (Doc. 12).

    In reviewing the decision of the ALJ in Social Security
cases, the only issue before the court is whether the decision is
supported by substantial evidence. <u>Richardson v. Perales</u>, 402
U.S. 389, 390 (1971).  "The findings of the Commissioner are not
subject to reversal merely because there exists in the record
substantial evidence to support a different conclusion.  Even if
the evidence could also support another conclusion, the decision
of the ALJ must stand if the evidence could reasonably support
the conclusion reached."  <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298,
300 (6th Cir. 2001) (citing <u>Buxton v. Halter</u>, 246 F.3d 762, 772-
73 (6th Cir. 2001)).

    In order to qualify for benefits, the claimant must
establish that he is disabled within the meaning of the Social
Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Id. at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities." Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not

disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was thirty-nine years old and has a high school education. He has past relevant employment as a laborer, janitor, psychiatric aide, and shift boss/foreman for a coal mining company. The claimant alleges he became disabled on August 13, 2004 due to the effects of arthritis, bone spurring in his spine, degenerative disc disease and depression.

At the hearing, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five-step evaluation for determining disability.

In the case at bar, the ALJ determined at step one, that claimant has not been engaged in substantial gainful activity since his onset date. At step two, the ALJ determined that the claimant has impairments that are considered severe, including arthritis and degenerative disc disease of the cervical and lumbar spine, but found that the claimant did not have a severe mental impairment. At step three, the ALJ determined that, although claimant has impairments that are "severe," he does not have an impairment, or a combination of impairments, that is listed in or equal to one listed at 20 C.F.R. part 404, subpart

3

P, appendix 1. Prior to step four, the ALJ determined that the claimant had the residual functional capacity ("RFC") for a significant range of light work. At step four, the ALJ found the claimant could not perform his past relevant work.

At step five, the ALJ found that the claimant is capable of performing other work which exists in significant numbers in the national economy at the light level, including parking lot attendant and packer, with 3,000 jobs in Kentucky and 212,000 jobs in nation. Accordingly, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in accepting the opinion of a non-examining source over that of a treating physician in finding that he does not suffer from a severe mental impairment because the consultant did not have access to his medical records from Cumberland River Comprehensive Care Center (CRCCC), including a RFC assessment of Dr. Arkadiev, which were submitted after the hearing.

The medical records from CRCCC show that the claimant saw a registered nurse at the facility on three occasions. On the treatment notes for the first two appointments, held June 10 and 20, 2006, the nurse reported, in the mental status/assessment summary, "no areas of significant concern." On both occasions, she also found that the claimant was friendly, cooperative, alert, attentive, had appropriate affect and clear speech and thought. On August 16, 2006, the nurse found that there were "no areas of significant change."

4

On August 7, 2006, the claimant saw Dr. Arkadiev, a psychiatrist, who diagnosed the claimant with bipolar disorder. Dr. Arkadiev submitted a psychological residual functional capacity assessment placing significant limitations on the claimant's ability to function and stating that the claimant could not perform any type of work on a routine basis.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2).  If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified.  Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

The ALJ considered Dr. Arkadiev's assessment, stating:

Exhibit 17F, submitted post-hearing by his attorney, indicates that Mr. Dobson has very recently seen psychiatrist Dr. Arkadiev.  In August 2006, within three weeks of the scheduled hearing, Mr. Dobson presented to Dr. Arkadiev, stating that he had been "told by his lawyer that he needed to be seen."  One might expect that a person suffering from a disabling depression might have mentioned that he was seeking help or treatment, as distinguished from documentation in support of a disability application.  In any event, Dr. Arkadiev proceeded to evaluate and assess the claimant with what appear to be Axis I diagnoses of bipolar disorder with psychotic symptoms and alcohol/THC (marijuana) dependence.  The psychiatrist assigned no GAF.  Dr. Arkadiev's Axis I assessment does not indicate any remission from substance abuse or dependence and, in any event, the source did not delineate which of the claimant's mental limitations were due to bipolar disorder versus any substance abuse or dependence disorder.  Because the documents from Dr. Arkadiev do not establish that he has actually seen the claimant more than once, and because there has been no delineation of substance abuse versus bipolar limitations, the undersigned accords minimal evidentiary weight to this late-submitted report.

(AR 15).

Here, plaintiff specifically argues that the ALJ should have given Dr. Arkadiev's opinion greater weight than the consulting opinion because he was a treating physician and the consulting physician did not have his complete medical file since she did not have Dr. Arkadiev's report.  Dr. Arkadiev, however, only saw the claimant on one occasion and there is no evidence that he had an "ongoing treatment relationship" with the claimant as required to meet the definition of "treating source" as defined in the regulations. 20 C.F.R. §404.1502;[1] Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 572 (6th Cir. 1989)(physician that evaluated claimant on one occasion is not a treating physician as defined by the Social Security Act). Accordingly, Dr. Arkadiev's assessment was not entitled to any special deference and the ALJ did not err in treating Dr. Arkadiev as a non-treating source.

Furthermore, even if the court were to find that Dr. Arkadiev is a treating source, his restrictive assessment is not

---

[1]C.F.R. § 404.1502 defines "treating source" as follows: *Treating source* means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a non-treating source.

supported by the medical evidence.  In fact, his assessment conflicts with the medical records provided by his own clinic. Specifically, as discussed above, the nurse that evaluated the claimant on three occasions found that there were no significant areas of concern.

In addition, the court finds that the ALJ's determination that the claimant does not have any psychological restrictions is supported by the record.  On February 9, 2005, claimant's neurosurgeon prescribed Effexor and recommended that the claimant make an appointment for psychological treatment for his anxiety and depression.  On his March 9, 2005 appointment, the doctor again told the claimant to seek psychological treatment and told him to bring a note from a psychologist stating that he was receiving treatment.

On March 15, 2005, the claimant was evaluated at the Logan-Mingo Area Mental Health Center (Logan-Mingo) and diagnosed with mild depression and anxiety.  The psychologist assigned the claimant a Global Assessment Functioning (GAF) score of seventy, which indicates some mild symptoms, but "generally functioning pretty well."  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). The psychologist authorized a conservative treatment plan consisting of spending more time with family and developing a hobby.

In June 2005, Dr. Smith, a psychologist, reviewed the record and concluded that the claimant did not have a severe mental

7

impairment.   In reaching her decision, Dr. Smith analyzed all the mental health records, and considered claimant's statements regarding his activities of daily living.

The court finds that the ALJ did not err in his decision to give little weight to the opinion of Dr. Arkadiev.  The court finds that, in assessing the claimant's RFC based upon his mental condition, the ALJ properly considered the claimant's testimony, the objective medical evidence, and the report of Dr. Smith.  The ALJ also considered the claimant's self-report that he had "no problem getting along with authority figures, no prior firings for problems in getting along with others, no unusual fears, a good ability to handle routine changes, and that he did well in dealing with stress."   Accordingly, the court finds that the ALJ's RFC determination is supported by substantial evidence and will not be disturbed.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence.  Accordingly, the claimant is not disabled within the meaning of the Social Security Act and the

8

ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 9) be, and it hereby is, **denied**; and that the cross-motion for summary judgment of the defendant (Doc. 12) be, and it hereby is, **granted**.  That a separate Judgment shall enter concurrently herewith.

This 26th day of August, 2008.



Signed By:

*__William O. Bertelsman__* _WOB_

**United States District Judge**